The next case, number 21-1735, United States v. Hector E. Navarro-Santisteban. At this time, would Attorney Jose Rodriguez please introduce himself on the record to begin? May it please the Court, Jose David Rodriguez on behalf of Mr. Antonio Navarro. Chief Judge, may I reserve two minutes for report? Yes. Thank you. Your Honors, during a family argument, Mr. Navarro voiced discontent in a crude and offensive way, but the surrounding circumstances showed this was not a true threat. Mr. Navarro is someone who has struggled with drug addiction for a while. However, in his 30 years of life, he has no incidents of physical violence. The government, at the revocation hearing, failed to establish that Mr. Navarro committed new criminal conduct, being the Puerto Rico misdemeanor offense of threats. And why is that? Regarding his father, the evidence was in violation of Rule 32.1, and the government acknowledges that in their brief. Regarding the sister and brother-in-law, the voice message that was played on record did not include a threat, plus there was no evidence supporting a reasonable fear from the sister's part. In fact, no evidence was presented that the brother-in-law was even aware of the voice message. And regarding his mother, the evidence failed to establish that a reasonable listener, aware of the context of the communication, will find that to be a true threat. And why? The surrounding circumstances. Here... Counsel, I thought the mother did testify, correct? Yes. She testified. And in her testimony, does she not refer to a threat against both her and the father? She... And those threats involve the use of a knife and a gun. Is that correct? That is correct, Your Honor. But there was no evidence that she communicated that threat to the father. In fact, when she testified and was asked by the government why the father had requested the harassment order, the mother said she spoke with, she was on the phone with the harassment order. And when she was asked, the mother, why he did that, she said because he was using drugs in the house. The mother knew nothing about threats. Counselor, putting aside the issue of threats against the father, why isn't it sufficient for the purpose of finding grounds for revoking the supervisor's release that he did make an explicit threat to the mother, which he testified to? Why does it matter whether the threat could also be established on sufficient evidentiary grounds that there was, in fact, a threat to the father? Why is that consequential for this proceeding? Your Honor, because he's being revoked for new criminal conduct and speech conduct. And the evidence here did not establish this was a conditional threat, what he said to the mother. The mother testified on a single instance over the phone. He said, if you don't tell me why my father has evicted me, I'm going to kill you. And the mother said, I didn't have anything to do with the eviction. So she answered his question. And after that, once he served with a harassment order, he did not call the mother again. There was no prior background of physical violence. There was no in-person confrontation. And Mr. Navarro was arrested for this probation officer's motion two weeks after the call. At docket N3-1389, you can see that the initial appearance here happened on June 29. And the phone call to the mother was on June 14. So if he indeed was intended to act upon these statements or if these were real threats, he had two weeks or around that time. Counselor, I'm not sure you're answering my question. Even if there are all of these issues with respect to any threat against the father, when the mother herself testifies, she's there, she testifies, and she describes a threat that the son made directly to her, why wouldn't that threat alone be a sufficient basis for finding that supervised release should be revoked? Your Honor, for the reason that this is a legal question, where the elements of the periodical offensive threats were established and the surrounding circumstances do not support that that phone call to the mother, that so-called threat to her, was a true threat, which is the critical thing here because we are dealing with pure speech. Well, you made the argument that it's an empty threat and the judge disagreed, in part, I gather, because there had been prior threats which had also resulted in an earlier revocation of supervised release. Is that not correct? Your Honor, he's being charged here with a new criminal conduct and whether he committed the violation or not, which is a legal question, if he committed this new offense, should be established on the evidence that was presented here and we are not on any prior incident. And in any event, in that prior incident, of which we don't know any details about in this record, it also seemed to have been an empty threat. I forget whether the record shows that the district court identified the Puerto Rico law that was violated or not. Your Honor, the parties were all in agreement that they were talking about the misdemeanor offense of threats, which is Article 177, when the defense attorney is expressing why no violation was... And did you make arguments about whether the elements of that offense were satisfied to the district court? That is correct, Your Honor. In the closing arguments by defense counsel, I don't have the exact page of the transcript. It's about six pages of the transcript where defense counsel discusses why the threshold for criminal conduct here was not met. Counsel, what does that statute tell us about the requirement of immediacy in the threat and whether the alleged victim has to experience a reasonable fear that the threat will be carried out? Does the Puerto Rico statute address those two issues? Your Honor, the Puerto Rico statute speaks of any person who threatens another with causing a determined harm. Now, the Puerto Rico legal scholars, criminal legal scholars who have interpreted that statute, because it hasn't been interpreted by the Puerto Rico Supreme Court, but the scholars who have interpreted it have found that it requires an unequivocal manifestation of the willingness to cause certain harm and an apparent danger to the listener. And, in fact, the element of the apparent danger to the listener is consistent with how this court and other federal courts have interpreted these pure speech crimes requiring evidence from the surrounding circumstances supporting that a reasonable person listening to this statement will have taken as a true threat. Well, the focus of the statute, as you quoted, seems to be on the nature of the language and whether it can be viewed as a serious threat. There's no reference there to how that threat would be experienced by the alleged victim. At least I didn't hear anything. Your Honor, the element, the listener's reaction to the statement is solely insufficient for a speech to become a crime. So the element of a reasonable fear, a reasonable person suffering fear is implied in that statute because of First Amendment commands. And it's consistent with how this court has seen, has interpreted similar threat statutes. For example, this court has described a true threat as one that a reasonable recipient familiar with the context of the communication will find threatening. And that element of reasonableness. But you're not, the district court here didn't reject that view of what needed to be found, did it? What view, Your Honor? What you just articulated. The elements that you're saying are required for us to conclude the misdemeanor threat statute in Puerto Rico has in order to be First Amendment compliant. You're not saying that the district court said those are not the elements. You're just saying it made a finding that those elements were satisfied that you think isn't supportable on the record, right? The district court below made no findings on legal elements on how the evidence supported it. Right, it just found that it satisfied the statute. So there's nothing to indicate it misapplied the law. It just maybe misapplied it in the sense that it found the law satisfied when the facts don't support that. That's your contention, right? Right, Your Honor, which is a legal question. I know my time is up, but if I may. Did you reserve any time? You reserved a couple minutes, so we can just do it at the end then. Yes, Your Honor. Did you want to talk about the sentence? Yes. Okay, just briefly do a couple minutes on the sentence. Can I proceed? Yes. And our alternative argument, Your Honor, is that the sentence here was a 15-month enhancement from the top of the GSR. The court relied on unsupported and unreliable findings to sentence Mr. Navarro as a serial threatener, that not only threatened his mother, but also the brother-in-law, the sister, and the father, and took into account four different threats to four different persons when the evidence was not there. And also when sentencing referred to a vandalism incident for which no evidence at all was presented at the hearing. Counsel, let me ask you, for purposes of sentencing and to weigh into sentencing the threats against the father and the sister and brother-in-law, would the court have to find that those threats met the legal definition of threats under Puerto Rico law, or could he take into consideration what was actually said to them, irrespective of whether what was said would meet the Puerto Rico definition of threats? The district court, Your Honor, this was a unitary proceeding in the sense that the court found the violation and immediately proceeded to impose sentence. So the same legal conclusion to which the court arrived that the evidence here established threats under Puerto Rico law to all of these individuals, the court transferred to its sentencing rationale. Thank you. Thank you, Your Honor. At this time, Attorney Conner can introduce himself on the record again. Good morning. May it please the Court, Greg Conner for the United States. Because the result would have been the same, absent the admission of the father's hearsay, given the remainder of the evidence on record, the lack of a Rule 32-1 balancing test was harmless. That's on the conviction? That's on the revocation itself as opposed to the sentence? That's correct. And I'll just preview my argument. I want to first talk about the revocation determination, the record, and the relevant legal sources. And then as far as the sentencing, to put it shortly, the government agrees with Judge Lopez's characterization that we don't think the district court had to make legally sufficient determinations about the remaining threats for the sentencing phase. It was conduct that the district court could consider. But as far as the revocation determination, I want to first hit on a few points from the record that I think are going to make the Rodriguez, Fontanez, and Mosley cases helpful to this Court's disposition. First of all, this is his second revocation for threatening family members. And if you look at the papers for the prior revocation, it's family members plural. This also all happened within the span of 11 months. So it's the same sentencing judge who was aware of the prior threats. Additionally, you have the admission to the probation officer, which is the probation officer's testimony at page 91. You have the admission. Excuse me, counsel. You say it's the same judge. What's the point of that? I mean, we understand the rules of evidence don't apply in probation revocation hearings, but the evidence to be considered does have to be reliable. Is your point that because the same judge heard the prior probation revocation and found there was a revocation on the basis of threats, that that enhances the reliability of that evidence and so he could consider that on the conviction issue as opposed to the sentencing issue? Is that your position? Well, I'll qualify it a little bit. Basically, we think the prior revocation provides the context both for the parent's reaction and for the district court to know that this is not his first revocation. So it was appropriate to consider those prior violations in deciding whether there was also a violation here? Is that your position? Yes, and I think the Mosley case, which this court has cited with approval, uses a similar rationale that the similarity between a prior offense and the current grounds for revocation adds to the general corroboration of the evidence. But beyond the prior revocation, beyond the admission to the probation officer, which he really hasn't contested up until this point, other than saying it wasn't memorialized in a writing. What was the admission? The testimony from the probation officer was that she spoke with Navarro after hearing from the parents and Navarro admitted that he made threats to his parents. And he specified the parents. He didn't include, the admission doesn't include the sister. It wasn't more specific than that, though, was it? It was not, but it is an admission that I think is part of the, you know, corroboration from the remainder of the record. Can we just isolate on the statement to the mother and whether that qualifies as a threat? As I understand it, the district court doesn't identify the elements of the offense that need to be found. It just identifies, I guess there's an apparent understanding that there's this misdemeanor statute, threat statute, and that's the statute in question. Right. And then the district court just finds it satisfied. And I guess, is this by preponderance that we're supposed to find this, or this is beyond reasonable doubt? Preponderance. Preponderance, right. So by preponderance it's found. Right. In reviewing whether there's a preponderance of the evidence that satisfies those elements, don't we need to articulate what the elements are and then what's our standard of review? I'm just trying to figure out how we're supposed to proceed in conducting the review that I think you're conceding we have to do, which is did the statement to the mother satisfy by a preponderance the elements of that Puerto Rico statute? Okay. So I think there are a few parts to your question. As far as the review on the legal question of whether the elements were met, I agree that this court would review that de novo. As far as the findings that the district court either made explicitly or tacitly accepted by the testimony. That we would not review de novo, but the overall question of preponderance we reviewed de novo, right? Right. And as far as what the offense consists of, I think I can save this court some work that we think even with the additional element from Navarro's legal commentator of reasonable fear, we think the remainder of the record evidence does show that the parents had reasonable fear, and that's supported both by the mother's specific testimony. Yes, she feared. She experienced fear from her son, and I think it's a reasonable inference. You know, how often do parents seek protection orders from their children? So of course the reason that both parents sought protective orders was because they experienced that reasonable fear. So as far as the competing legal authorities in our addendum. So you're willing to have us accept the most favorable to him that he articulates, and then say that de novo review we would still find by preponderance it's satisfied. That's correct, and I do want to add the qualifier that we don't agree with what he says his legal authority says. I understand. Okay, so for example, you can threaten someone's family member, and it's not necessary for that family member to have received the threat. It doesn't matter for the threat to the mother. Right. So as far as the brother-in-law never receiving the threat, if the statement to the sister did consist of a threat, it doesn't matter that there wasn't evidence that the brother-in-law was aware of it. Same with the statement to the mother. I can't reach any of that in your view because of the direct threat to the mother. That's correct. Yep. That's correct. So with respect to the sentence, unless either of my colleagues has anything more on the revocation itself, just with respect to the sentence, what is your response to the reliance on the vandalism and the evidence of the additional threats based on evidence where nobody testified on behalf of it? Okay, so first in terms of the vandalism, and this is what we described in our brief, we think that the district court was generally summarizing and crediting testimony. And in talking about the mother, the district court was explaining the effect of this situation on the mother, and that's consistent with her testimony, which is that this is a period of days. A lot happened. She was very anxious based on all of the messages she received and everything. So when the district court is saying she came home and her house was vandalized, we think that is still a step short from accusing Navarro of doing that. It's a pretty tough way to read that, counsel. I mean, the district court is explaining the factors that are going to lead to the decision that he makes, and he goes out of his way to describe the vandalism. What would be the point of doing it? It's not just a neutral account of sort of what happened in the background. He seems to be explaining what matters to him in terms of the sentence that he's about to deliver. So I don't know how you can respectfully just walk away from the significance of that. It's just kind of a throwaway line. It doesn't read like a throwaway line. It reads like something that matters to him in making the sentence that he's about to announce. Right. So I don't think it's a throwaway line. I think it is important, and he did credit the mother's testimony that this had a strong effect, as I mentioned before. When you say it's important, we don't know how important, and there's really virtually no reliable evidence that this actually happened. Isn't that a problem? If we have an item that seems to be important in the sentencing decision, which appears to be based on nothing in the rankest hearsay, isn't that a problem in terms of defending the sentence? Well, as far as the reliability, it is reliable because this is just about verbatim what the mother testified to. So the fact that her house was vandalized, and then that's sort of the overwhelming experience that she's on the receiving end of, both by getting these nasty messages and coming home and having her house. I think a window was broken. The door was busted. So I think that that is supported and reliable based on her testimony. And again, I don't think it's unimportant. I think it is important for the district court to describe what she was on the receiving end of. As far as the remainder of the evidence and whether it was reliable, it does sort of tie into our view of the vandalism description, which again we think is short of an accusation. The district court reviewed the testimony in an hour and 45-minute hearing and generally credited that testimony. And basically I think the record evidence does support the description of the call to the mother and the messages to the sister even if that didn't amount to a legal threat. But the things beyond the call to the mother are based on statements of people who didn't testify, correct? No, not exactly. So first of all, the hearsay of the father is one answer in this hour and 45-minute hearing. So I think it is relatively minimal as far as the effect it had on this case. But then as far as the remaining statements or the element of fear that the father experienced, there are other parts of the record that corroborate all of that. The father took out a protection order. Again, the admission to the probation officer corroborates the fact that these statements were made and that they're understood by an ordinary person as threatening. But all I'm saying is that the district court also appears to have relied on statements. You're suggesting that you could reach those conclusions without relying on statements to which no one testified. But the district court, if I read it, there's no indication that it didn't rely on those other statements in coming to those findings. I'm not meaning to split hairs. I don't think it's statements plural. I think it's one statement by the father to the probation officer that I was threatened. And as far as reliance by the district court, the district court didn't disavow the statement that the father made, but as far as the threat to the father, it's not clear that the district court relied specifically on that in saying the father was threatened. That would suggest maybe we should vacate and remand for resentencing, unless it's not a problem if the district court did rely on that statement. Okay, my answer is sort of twofold. One, I don't think, I think the remainder of the evidence allowed the district court to make the determination or reference the threat to the father. It's not, the district court doesn't specifically reference his hearsay when he made that determination. And to your vacating question, I think even if this court read into that explanation reliance on the hearsay statement, I think it was harmless because of the corroborating, the remaining corroborating evidence. And that seems to be the rationale that the Seventh Circuit used in the Mosley case, which is that even if there's a problem with this hearsay, if it's corroborated by other evidence, it's harmless. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record. He has a two-minute rebuttal. May it please the Court, Jose Rodriguez on behalf of Mr. Navarro. Your Honors, the district court below did repeatedly refer to the hearsay when explaining the sentence, made reference to the probation officer's testimony and found that based on that testimony that the father was threatened. So the court did rely, that's on the transcript at page of the appendix 129. Regarding the fear that the mother testified she had, it was never established. She was never asked whether she was in fear for her life or in fear because of the single phone call. The answer was, the question was whether she was fearful if her son was released. She said yes, and the prosecutor didn't expand on that. But beyond that, it's not that. Counsel, is it correct that she also sought a protective order after her son threatened her? She sought a harassment order for which you don't need under Puerto Rico law to be afraid for your life. And she wasn't asked if she sought that harassment order because she feared for her life. She could have very well obtained it because she doesn't want her son to keep calling her phone. Did she also report what she experienced to the probation officer? She did, didn't she? Did she report what her son had said to her, the phone call? Did she also report that to the probation officer? Yes, she called the probation officer. Well, don't those actions, seeking a protective order, reporting to probation officers, suggest that she's concerned for her own welfare? That's why she's reporting this stuff and seeking protection. She called the probation officer to complain about these harassing calls, but, Your Honors, the reaction for a true threat, a person's, the listener's reaction is itself insufficient because then we'll all be, First Amendment speech will be at the mercy of a person's reaction, of the listener's reaction. The surrounding circumstances, which is a critical thing here, do not support that these words made in a family argument that were conditional and that Mr. Navarro, after being served with the harassment order, ceased all that conduct. Those surrounding circumstances do not support that these were more than offensive remarks, crude remarks, sometimes sadly happen in a family argument, but nothing beyond that, Your Honor. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.